# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| Victoria B. Foxworthy, Mother, | ) | |
| Next-of-Kin and Co-Administrator | ) | |
| of the Estate of Jarrod Ty Foxworthy, | ) | |
| Deceased; Robert B. Hines, II, | ) | |
| Co-Administrator of the Estate of | ) Case No. 2:18-cv-00040-JPJ-PMS | |
| | ) | |
| Jarrod Ty Foxworthy, Deceased, | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
|     Defendant | ) | |

## AMENDED COMPLAINT

### NATURE OF THE ACTION

1.　　This is an action for the wrongful death of Jarrod Ty Foxworthy for the negligence of employees of the United States at the United States Penitentiary, Lee ("USP Lee") in Lee County, Virginia. Plaintiffs file this amended complaint that drops all claims against the individual (*Bivens*) Defendants and adds The United States as the (sole) Defendant. The caption of the case is accordingly

amended to reflect that the United States is the sole Defendant. <u>See</u> Minute Order (ECF 24).[1]

2.    Jarrod Ty Foxworthy died on October 28, 2016 after he had been strangled to death by his violent and paranoid cellmate, Eric Horne.

## **PARTIES**

3.    Victoria Foxworthy and Robert B. Hines II are the duly appointed co-administrators of the Estate of Jarrod Ty Foxworthy, who died on October 28, 2016, having qualified as such on March 29, 2018 in Lee County, Virginia.

4.    Defendant United States of America (the "United States") at all relevant times operated the Bureau of Prisons and the prison in question — USP Lee, Hickory Flats Road, Pennington Gap, VA 24277. Defendant United States is sued under the Federal Tort Claims Act for the *negligent* acts of its employees and Bureau of Prison agency.

---

[1] Because the United States District Attorney for the Western District of Virginia and the United States Attorney General were previously served with process for the *Bivens* complaint, counsel for The United States, Justin M. Lugar and Plaintiffs' counsel have agreed, subject to the Court's approval, that The United States will have 60 days to answer  or otherwise plead from the date of filing of the amended complaint and that new process need not be served. A copy of this complaint is being served by email to Justin M. Lugar: justin.lugar@usdoj.gov. An agreed motion and order will be presented to the Court after this Amended Complaint is filed whereby Mr. Lugar enters an appearance and the parties agree, subject to the Court's order and approval, that the United States will file its answer/response 60 days after filing of the amended complaint and that the prior service on the Attorney General and U.S. Attorney for the Western District of Virginia is effective in this FTCA case.

## JURISDICTION & VENUE

5.     This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*., and Virginia common law.

6.     This Court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1346(b)(1). This Court has jurisdiction over the supplemental state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1402(b).

8.     Plaintiffs submitted an Administrative Claim for the claims against the United States of America set forth below to the Federal Bureau of Prisons, which was received by the agency on June 28, 2018. A true and correct copy of the administrative claim (Form 95 and Exhibit A thereto) is attached hereto as **Exhibit 1**.

9.     By letter dated February 4, 2019, the Federal Bureau of Prisons denied Plaintiff's Administrative Claim. A true and correct copy the denial letter is attached hereto as **Exhibit 2**.

10.    Accordingly, all conditions precedent to a Federal Tort Claims Act action in this court have been met.

# FACTUAL BACKGROUND

11.     On October 28, 2016 at approximately 20:58 (8:58 p.m.) Jarrod Ty Foxworthy was found unresponsive in his cell.

12.     The prison reported to the Medical Examiner's office that Foxworthy had a cellmate Eric Horne.  The prison negligently delayed medical care and calling an ambulance. The ambulance was not called until 21:30 (9:30 p.m.). Foxworthy was taken by ambulance and transported to Lone Pine Hospital (arriving at 22:00 (10:00 p.m.). Foxworthy  was pronounced dead at 22:27 (10:27 p.m.). The autopsy performed by the Medical Examiner concluded Foxworthy's death was "homicide" and the death occurred by strangulation.

13.     Jarrod Ty Foxworthy was in prison serving a 42 month sentence for unlawful possession of a firearm by a felon. He had previously served time in prison in USP Pollock, Grant Parish, Louisiana. He was transferred to USP Lee and was placed in the Special Housing Unit ("SHU") unit in administrative detention for his personal protection because, as Mr. and Mrs. Foxworthy learned from their son, he had been "fingered" by other inmates as being a "snitch" based upon the inmates obtaining his plea agreement on PACER that pledged "cooperation" with the authorities. This placed him at risk of harm from other inmates. Records Mrs. Foxworthy received also show that her son had been

4

placed in administrative detention at USP Pollock for his own safety in June, 2016. (Administrative Detention Order, June 4, 2016).

14.    While removal from the general prison population for safety reasons related to having been labelled a "cooperator" may have been well-intentioned, his SHU placement exposed Foxworthy to greater harm from a known violent offender with known mental problems and medication issues.

15.    Jarrod Ty Foxworthy was placed with a cellmate (Eric Horne) who, unlike Foxworthy, was in disciplinary segregation because of his anger and violent actions and tendencies.

16.    Jarrod Ty Foxworthy informed his parents that his cellmate was crazy and that he feared for his safety. Upon information and belief, Jarrod Ty Foxworthy also informed employees of USP Lee that his cellmate was crazy and that he feared for his safety and requested that he be separated and moved away from Eric Horne.

17.    Upon information and belief, employees of the Defendant were aware of Horne's violent risk and negligently by ignoring that risk. Employees of Defendant negligently caused injury (and death) by misusing governmental authority and negligently performing their required acts in violation of federal law.

18.    The  Foxworthys visited their son at USP Lee on October 23, 2016 and Jarrod Foxworthy informed them that his roommate was "crazy, paranoid and hearing voices of Jesus and the Devil." On information and belief, the prison and Defendant's employees were specifically aware of Horne's bizzare and dangerous behavior and thus acted negligently. Defendant's employees further acted negligently  by failing to follow policy and post orders that would have prevented the fatal attack on October 28, 2016.

19.    Jarrod Ty Foxworthy's roommate, Eric Horne, was serving federal prison time for a felon in possession of a firearm -- serving a 96 month BOP and 3 year term of SRV(supervised released violator), mental health and drug treatment, standard conditions of release and $100 special assessment.

20.    Eric Horne had a violent criminal record (including convictions for shooting, burglary, assault) with mental health issues. He had also pleaded guilty to a state crime of aggravated assault in connection with the federal firearm charge (and was serving time in state prison at the time of his federal sentencing).

21.    BOP policy and USP Lee post orders specifically required the guards to make rounds every thirty minutes in the SHU and to record log entries. Employees of the United States negligently violated the specific policies and the discretionary function exemption is not applicable where policy/orders direct the

6

manner in which the BOP must fulfill the duty to protect inmates. After Foxworthy 's death an investigation at the prison found that USP Lee guards/ correctional officers) had not made the required 30 minute rounds. These acts of negligence proximately caused Foxworthy's death. Foxworthy was found unconscious at 8:58 p.m. and corrections officers failed to make required rounds at 6;56 p.m. and 8:23 p.m. Accordingly, the failure to conduct rounds was a proximate cause of the fatal assault as earlier checks would have noted Horne's violent and aberrant behavior and the failure to make those rounds by officers created the condition whereby Horne knew the guards were not watching him.

22.   Specific BOP policies also required that inmates such as Jarrod Foxworthy who were placed in administrative detention for their own protection were to be placed  in a special-purpose housing unit for inmates who face similar threats, with conditions comparable to those of the general population. Employees of the United States violated the specific policies and the discretionary function exemptions not applicable where policy/orders direct the manner in which the BOP must fulfill the duty to protect inmates. The failure to place Foxworthy in a special-purpose housing unit for inmates who face similar threats with conditions comparable to those of the general population was also a proximate cause of the death because although generally decisions on inmate housing are discretionary, here there was a special duty of protection owed to Foxworthy because this was a "protection case."

23  Specific BOP policies also directed the manner in which the BOP had to operationally carry out its duty of protection when faced with an inmate (such as Eric Horne) who was exhibiting signs of distress, deterioration, or sudden changes in behavior. Employees of the United States violated the specific BOP and post policies/orders and the discretionary function exemption is not applicable where policy/orders direct the manner in which the BOP must fulfill the duty to protect inmates. These acts of negligence proximately caused Foxworthy's death as Foxworthy should never have been placed with Horne in violation of the BOP policy regarding inmates who showed signs of distress, deterioration, or sudden changes in behavior.

24.  BOP policies and specific post orders strictly required 30 minutes checks in the SHU and Defendant' negligent failure to make these rounds created a grave risk to the safety and wellbeing Jarrod Ty Foxworthy.

25.  Plaintiffs aver on information and belief that Defendant' employees were specifically aware of Horne's abnormal and dangerous behavior and the serious risk he posed to Foxworthy but negligently failed to conduct timely rounds and negligently failed to follow BOP policies and post orders for reporting his behavior and isolating/watching Horne.

26.  Plaintiffs further plead, upon information and belief, that those employees present on the evening of October 28th were negligent in failing to render timely

aid to Jarrod Foxworthy. Foxworthy was found unconscious in his cell at 8:58 PM. according to the USP Lee's Warden Ratledge. However, EMS (ambulance) was not called until 9:30 PM.

27.    According to ambulance and hospital records Foxworthy was found unconscious and *alive* with "bruises on the left side of his forehead" and "road rash marks." Intubation by EMS was "successful," the EMS team obtained "good lungs sounds" with "equal bilateral chest rise" and a shockable rhythm and when Foxworthy was defibrillated.

28.    Had employees of the United States not acted negligently in failing to timely render aid and medical care and call for emergency medical care when Foxworthy was found unresponsive at 8:58 p.m., more likely than not he would have survived. The discretionary function exemption does not apply to decisions to unreasonably delay obtaining emergency medical care for an inmate who had been choked to the point of unconsciousness. Undue and negligent delay in rendering/calling for medical care proximately caused Foxworthy's death.

## CAUSE OF ACTION

(Negligence)(Federal Tort Claims Act)(Against Defendant United States)

29.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

30.    The United States and its employees had a duty of care to Jarrod Foxworthy while he was incarcerated at USP Lee.

31.    Employees of the United States knew or should have known that post orders for the special housing unit (SHU) mandated timely checks on the inmates because prisoners in the SHU, specifically prisoners such as Jarrod Foxworthy, were likely to be assaulted or injured by the actions of violent paranoid cellmates, including Eric Horne.

32.    Employees of the United States knew or reasonably should have known that Eric Horne was likely to engage in violent acts to injure Jarrod Foxworthy.

33.    Employees of the United States acted negligently by failing to follow specific BOP/post orders as alleged above.

34.    Employees of the United States acted negligently in hiring, training, retaining, and/or supervising Defendant' employees at USP Lee.

35.     Employees of the United States acted negligently in failing to take reasonable steps to prevent prisoners at USP Lee, including Jarrod Foxworthy, from being assaulted.

36.     Employees of the United States knew or should have known that Horne was targeting Jarrod Foxworthy and observed, or should have observed, that Horne was acting violently toward Foxworthy such that they knew or should have

known to report the behavior, investigate further and/or otherwise intervene to prevent assault and injury to Foxworthy.

37.    Employees of the United States were acting within the scope of their employment when they engaged in these negligent acts and/or omissions.

38.    As a result of the negligence of USP Lee employees, Jarrod Foxworthy was violently strangled to death.

39.    Employees of the United States acted negligently in failing to take reasonable steps to call EMS and obtain medical and emergency assistance when Foxworthy was found unconscious in his cell and this proximately caused his death.

40.    Plaintiff avers that a special relationship existed between the United States and Eric Horne, because employees of the United States took charge of or exercised control  of Eric Horne when he was acting violently minutes before the strangulation and the United States is therefore liable under 28 U.S.C. § 1346(b)(1) and Virginia law.

41.    Plaintiff further avers that one or more employees of the United States assumed a duty  by promising to protect Jarrod Foxworthy from Eric Horne and negligently performed that duty.  Once federal government officials affirmatively decide to undertake to carry out a duty, the discretionary function exception of section 2680(a) is not applicable if those officials perform that duty

11

negligently, even though their decision whether or not initially to undertake that duty was itself discretionary. Defendant also had a specific and mandatory duty of protection pursuant to BOP policies for "protective care" of Jarrod Foxworthy that constituted an express (and mandatory) and/or assumed duty of care..

## **DAMAGES**

45.    Jarrod Ty Foxworthy is survived by his parents (lawful beneficiaries) who have sustained financial and pecuniary loss as a result of the death of the decedent and have suffered mental anguish and emotional loss and such other damages as are recoverable under the Virginia Wrongful Death Act as set forth in Virginia Code Section 8.01-50 *et. seq*.

46.    Plaintiffs herein claim as damages against the United States the following:

- Medical and hospital expenses incident to the injuries that caused the decedent's death;

- Funeral and burial expenses;

- Any pecuniary and financial losses suffered by the beneficiaries;

- Mental anguish, solace, loss of society, companionship, comfort, guidance, timely offices and advice of the decedent suffered by the beneficiaries;

- Compensation for the reasonably expected loss of income of the decedent;

- The reasonable value of the loss of services, protection, care and assistance provided by the decedent;

- Pain and suffering of the decedent as allowed under Virginia Code Section 8.01-25;

- Such other damages allowable by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1. A judgment for compensatory damages;

2. The costs of this suit; and

3. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/John E. Jessee
John E. Jessee (VSB #39684)
200 Valley Street, NW
P.O. Box 1506
Abingdon, Virginia 24210
Telephone: (276) 628-1089
Facsimile: (276) 628-2411
Email: jjessee@bvu.net

s/David Randolph Smith
David Randolph Smith (TN bar #011905)
DAVID RANDOLPH SMITH & ASSOCIATES

1913 21st Ave South

Nashville, Tennessee 37212

(615) 742-1775

Email: drs@drslawfirm.com


*CERTIFICATE OF SERVICE*

I certify that a copy of this Amended Complaint was served by email to:

Justin M. Lugar, Esq.

Justin.Lugar@usdoj.gov

Assistant United States Attorney

United States Attorney's Office

Western District of Virginia

Office:  (540) 278-1471

Fax:  (540) 857-2614

On this the 25th day of July, 2019,


s/David Randolph Smith

14

Exhibit 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Federal Bureau of Prisons, Mid-Atlantic Regional Office, 302 Sentinel Suite 200, Annapolis Junction, Maryland 20701 | Victoria B. Foxworthy, Mother and Co-Administrator of the Estate of Jarrod Ty Foxworthy, deceased (date of death October 28, 2016) |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 03/07/1986 | single | 10/28/2016          unknown | PM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See attached Exhibit A and 18 exhibits thereto.

**9.                                    PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

**10.                           PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Claim for wrongful death caused by negligence of employees of USP Lee County federal prison. See Exhibit A. Jarrod Ty Foxworthy, age 30, was strangled to death by his cellmate, Eric Horne. Inmate # 24801-076. The failure to conduct timely patrols, monitoring and inmate checks, as mandated  by Post Orders and the failure to timely report and respond to  Horne's paranoid and dangerous behavior  asrequired by Post Orders  caused Foxworthy's death and present a  failure to protect claim.

| 11.                                    WITNESSES | |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| See Attached Exhibit A at  p. 7 | |

12. (See instructions on reverse).                    AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| | | $5,000,000.00 | $5,000,000,00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Victoria B. Foxworthy* | 326-402-0509 | 6-2-18 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. Principal Purpose: The information requested is to be used in evaluating claims.
C. Routine Use: See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

EXHIBIT A to Form 95

---

Victoria B. Foxworthy, Mother, Next-of-Kin and
Co-Administrator of the Estate of Jarrod Ty Foxworthy,
Deceased (date of death: October 28, 2016)

       Plaintiff,

vs.

UNITED STATES OF AMERCIA
       Defendant.

---

**FORM 95 CLAIM FOR WRONGFUL DEATH OF JARROD TY FOXWORTHY**

---

1. **Claimant.** Victoria Foxworthy is a duly appointed administrator (co-administrator) of the Estate of her deceased son, Jarrod Ty Foxworthy, who died on October 28, 2018 as a result of the negligence of employees of the USP Lee.[1] Jarrod Ty Foxworthy was born March 7, 1986. His Social Security number was: 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. Mrs. Foxworthy and her husband, Ty Foxworthy, are the surviving parents and sole next-of-kin of their deceased son, Jarrod Ty Foxworthy (who never married and fathered no children). Mrs. Foxworthy's e-mail address is: vickyfoxworthy@bellsouth.net. Her phone number is (336) 402-0509. Her address is: D74 Goose Creek Resort, North Carolina 28570. She and her husband (and the Estate of Jarrod Ty Foxworthy) are represented in this Federal Torts Claims Act ("FTCA") claim (and suit if necessary) by David Randolph Smith, Esq., DAVID RANDOLPH SMITH & ASSOCIATES, 1913 21st Ave. South, Nashville, Tennessee 37212. Mr. Smith's email is: drs@drslawfirm.com. The firm telephone is (615) 742-1775 and the fax number is (615) 742-1223.[2]

---

[1] Estate qualification court papers atteahed as Exhibit 18.

The facts, upon discovery, may further show deliberate indifference supportive of a Bivens claim for deliberate failure to make timely 30 minute rounds as to known violent prisoners and deliberate indifference to serious medical needs (deliberately indifferent delay in treatment). Claimant is hopeful this FTCA suit can be settled to obviate further litigation.

[2] Despite several FOIAs request for Jarrod Ty Foxworthy's BOP records and other relevant information, the BOP, FBI and DOJ have refused to release records on the grounds that the matter is under criminal investigation. *See* FOIA requests and denials (**Exhibit 1**).

1

2. **Nature of the Claim.** This is an FTCA claim for wrongful death tort damages governed by Virginia negligence law.[3]

Foxworthy's FTCA action is a claim for negligence claim for failure to protect Jarrod Ty Foxworthy from a known dangerous inmate despite specific notice of his cellmate's danger and by failing to conduct 30 minute rounds in the SHU. The prison and its employees failed to protect inmate Jarrod Ty Foxworthy from a deadly assault (strangulation resulting in death) that inmate Foxworthy suffered in the Special Housing Unit ("SHU") at the hands of his fellow inmate and cellmate, Eric Horne. Criminal charges against Horne are pending/under federal investigation by the F.B.I and the United States Attorney's office: Assistant U.S. Attorney Zach Lee, 180 W. Main Street, Abingdon, VA 24210, Phone: 276-628-4161, Fax: 276-628-7399; other # Roanoke 540-857-2250.

In actions brought under the FTCA, federal courts apply the substantive law of the state in which the act nor omission giving rise to the action occurred." <u>Myrick v. United States</u>, 723 F.2d 1158, 1159 (4th Cir. 1983). *See also* 28 U.S.C. § 1346. "The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." <u>Talley v. Danek Medical, Inc</u>., 179 F.3d 154, 157 (4th Cir. 1999). US Lee and its employees unquestionably owed a legal duty of care to Foxworthy pursuant to 18 U.S.C. § 4042. This duty "requires the exercise of ordinary diligence to keep prisoners safe and free from harm," and to recover, a plaintiff must show that the government was negligent in the exercise of its responsibilities. <u>Jones v. United States,</u> 534 F.2d 53, 54 (5th Cir. 1976). The standard of conduct of a 'reasonable man' in a negligence case is generally determined by a jury on a case-by-case basis." <u>Talley</u>, 179 F.3d at 158.

Although *generally* failure to protect claims are barred, jurisdictionally, by the discretionary function exemption (*see e.g*., <u>Rich v. United States</u>, 811 F.3d 140 (4th Cir. 2015), in this case the discretionary function exemption *does not apply* because US Lee and the prison employees violated mandatory and specific post orders applicable to the SHU. <u>Brembry v. United States,</u> No. 7:10-cv-388, 2011 U.S. Dist. LEXIS 3302 (W.D. Va. Jan. 13, 2011)(US Lee post orders for SHU were specific, mandatory and thus discretionary function exemption did not apply to failure to protect claim brought by an inmate who was

---

[3] As noted in fn. 1 *supra* if facts are discovered and investigation warrants, there is a potential for a <u>Bivens</u> Eighth Amendment claim against individual defendants/officers for deliberate indifference. The failure to conduct timely rounds in the prison setting where there is a known risk of violence can give rise to an Eighth Amendment deliberate indifference claim where an inmate assault occurs. *Cf.* <u>Ferreira v. Corsini</u>, No. 13-12863-IT, 2016 U.S. Dist. LEXIS 124943 at *32-33 (D. Mass. Aug. 11, 2016) (supporting case on these facts in context of state action under § 1983). The failure to render medical aid and undue delay in calling for medical help may also support an Eighth Amendment claim. *Cf* <u>De'Lonta v. Angelone</u>, 330 F.3d 630, 634 (4th Cir. 2003)( To be "sufficiently serious," the deprivation must be "extreme"-- meaning that it poses "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions."). *See also* <u>Strickland v. Halsey</u>, 638 F. App'x 179 (4th Cir. 2015)(deliberate indifference by officers where inmate murdered another inmate).

2

assaulted by fellow inmates at US Lee: "Given the carefully-hedged language of the Post Order Review Sheet, the court cannot read the applicable post orders as providing Tignor with the amount of carte blanche necessary to trigger the discretionary function exception." Bremby at * 13 ( Bremby cases [including prior Magistrate opinion] attached as **Exhibit 2**)[4].

In addition, BOP policy and post orders specifically directed the manner in which the BOP had to operationally carry out its duty of protection when faced with an inmate (such as Eric Horne) who was exhibiting "[a]ny signs of distress, deterioration in hygiene, or sudden changes in behavior." (**Exhibit 3** at 52, 53, ). *Cf. Calderon v. U.S.,* 123 F.3d 947, 950 (7th Cir. 1997) (discretionary function exemption not applicable where policy/orders "direct the manner by which the BOP must fulfill their duty to protect inmates.").

3. **Facts Supporting the Negligence Claim**

*Incident & Background Facts.* On October 28, 2016 at approximately 20:58 (8:58 p.m.) Jarrod Ty Foxworthy was found unresponsive in his cell. Letter from Warden Ratledge, October 28, 2016. (**Exhibit 4**); *Report of Assistant Chief Medical Examiner Suzuki* (**Exhibit 5**). The prison reported to the Medical Examiner's office that Foxworthy had a cellmate (Eric Horne). *Id.* Foxworthy was taken by ambulance (that arrived at 21:30) and was transported to Lone Pine Hospital (arriving at 22:00) and was pronounced dead at 22:27. The autopsy performed by the Medical Examiner concluded Foxworthy's death was "homicide" and the death occurred by strangulation. *Autopsy Report of Assistant Chief Medical Examiner Suzuki* (**Exhibit 5**). The pertinent medical records and ambulance records are attached as **Exhibit 6**.

Jarrod Ty Foxworthy was in prison serving a 42 month sentence for unlawful possession of a firearm by a felon. https://ecf.lawd.uscourts.gov/cgi-bin/DktRpt.pl?342537078313528-L_1_0-1. He had previously served time in prison in USP Pollock, Grant Parish, Louisiana. He was transferred to USP Lee and was placed in the SHU unit in administrative detention for his personal protection because, as Mr. and Mrs. Foxworthy learned from their son, he had been "fingered" by other inmates as being a "snitch" based upon the inmates obtaining his plea agreement (Ex. 16) on PACER that pledged "cooperation" with the authorities. *Id.* at Dkt. No. 87. This placed him at risk of harm from other inmates.[5] Records Mrs. Foxworthy received also show that her son had

---

[4] *See also* Garza v. United States, 161 F. App'x 341 (5th Cir. 2005) (holding that exception did not apply where individual guard did not follow a "post order"); Irvin v. Owens, Civ. No. 10-1336, 2012 U.S. Dist. LEXIS 59632, 2012 WL 1534787, at *6 (D.S.C. Apr. 30, 2012) (finding that exception did not apply where prison guards failed to follow policy "requiring a staff member to be on the sidelines during intermural" prison league basketball games); D'Antuono v. United States, Civ. No. 07-123, 2010 U.S. Dist. LEXIS 60102, 2010 WL 2465493 (N.D. Tex. June 15, 2010) (following Garza).

[5] *See* https://www.wsj.com/articles/criminals-subvert-online-court-records-to-expose-snitches-1497960000:

3

been placed in administrative detention at USP Pollock for his own safety in June, 2016. (*Administrative Detention Order*, June 4, 2016). (**Exhibit 7**).

While removal from the general prison population for safety reasons related to having been labelled a "cooperator" may have been well-intentioned, his SHU placement actually exposed Foxworthy to greater harm from a known violent offender with known mental problems and medication issues. Jarrod Ty Foxworthy was placed with a cellmate (Eric Horne) who, unlike Foxworthy, was in *disciplinary segregation* because of his anger and violent actions and tendencies. Jarrod Ty Foxworthy informed his parents that his roommate was crazy and that he feared for his safety. Mrs. Foxworthy believes prison officials were aware of Horne's violent risk and ignored that risk. The Foxworthys visited their son at US Lee on October 23, 2016 and Jarrod informed them that his roommate was "crazy, paranoid and hearing voices of Jesus and the Devil." On information and belief, the prison and Lieutenant were specifically aware of Horne's bizzare and dangerous behavior and failed to follow policy and post orders that would have prevented the fatal attack on October 28, 2016.

Jarrod Ty Foxworthy's roommate was Eric Horne, who was serving federal prison time for a felon in possession of a firearm -- serving a 96 month BOP and 3 year term of SRV (supervised released violator) , mental health and drug treatment, standard conditions of release and $100 special assessment.
https://ecf.tnwd.uscourts.gov/cgibin/DktRpt.pl?123080154342912-L_1_0-1
Eric Horne had a violent criminal record (including convictions for shooting, burglary, assault) with mental health issues and had also pleaded guilty to a state crime of aggravated assault in connection with the federal firearm charge (and was serving time in state prison at the time of his federal sentencing). See **Exhibit 8**, Eric Horne criminal history documents.

*Negligence Facts.* BOP policy and US Lee post orders specifically required the guards to make rounds every thirty minutes in the SHU and to record log entries. "Bureau staff make

---

Across the country, close to 700 witnesses and informants believed to have cooperated with the government have been threatened, wounded or killed over a recent three-year period, including 61 murdered, according to estimates from a recent survey by the federal judiciary's research arm. Some judges suspect those numbers may be low.

The justice system has long been dependent upon tips, recordings and other information from suspected criminals to catch bigger fish in investigations into gangs and drug traffickers. Those who offer substantial assistance to an investigation or prosecution can get more than a third of their prison sentences cut.

But inmates determined to unmask a "snitch" are getting more sophisticated, diving deep into court dockets and decoding sentencing motions filed by prosecutors for clues to who is talking. A proliferation of court records online on PACER—the pay-per-page portal run by the courts—and smartphones have made it easier for criminal gangs to find files that could expose cooperators, according to judges and lawyers.

4

30-minute rounds, [in SHUs] ensuring that all required conditions are met."[6] After Foxworthy's death an investigation at the prison found that USP guards/correctional officers *had not made* the required 30 minute rounds and had in fact *falsified* their log sheets, resulting in indictments and admissions of guilt. *See:*

> Indictment of Charles Carter (**Exhibit 9**)
> Indictment of William Marshall (**Exhibit 10**)
> Indictment of Jerry Shuler (**Exhibit 11**)
> Indictment of Ryan Sluss (**Exhibit 12**).

Importantly, these documents show that rounds were not made on the day of Foxworthy's death (10/28, and in the days before-- see **Exhibits 11, 12**) and that:

> "3. Specifically, on or about October 28, 2016, RYAN SLUSS placed the initials of Correctional Officer WK on a "Special Housing Unit 30 Minute Rounds" form stating that on October 28, 2016, Correctional Officer WK conducted a round at 4 :42 p.m. in the Special Housing Unit.

> 4. Specifically, on or about October 28, 2016, RYAN SLUSS placed the initials of Correctional Officer JE on a "Special Housing Unit 30 Minute Rounds" form stating that on October 28, 2016, Correctional Officer JE conducted rounds. at 6:56 p.m., and 8:23 p.m. in the Special Housing Unit.

> . 5. At the time RYAN SLUSS placed the initials of Correctional Officers WK and JE on the "Special Housing Unit 30 Minute Rounds" form stating they conduct~ rounds in the Special Housing Unit at the above specific times, he knew that Correctional Officers WK and JE had not conducted the rounds at those times."

> (**Exhibit 12**, Indictment of Ryan Sluss).[7]

On October 27, 2017 Ryan Sluss admitted to this offense and entered a non-prosecution agreement (**Exhibit 13**), that provided in pertinent part:

> IN THE UNITED STATES DISTRICT COURT
> FOR THE WESTERN DISTRICT OF VIRGINIA
> BIG STONE GAP DIVISION
> UNITED STATES OF AMERICA
> v. Case No. 2:17CR00019
> RYAN SLUSS
> NON-PROSECUTION AGREEMENT

---

[6] D.O.J Report and Recommendations Concerning the Use of Restrictive Housing (Jan. 2016) **Exhibit 3** at p. 29 (https://www.justice.gov/archives/dag/file/815551/download); Fed. Bureau of Prisons: Special Housing Unit Reviwew and Assessment (Dec. 2014)(Ex. 3 at 173)( https://www.bop.gov/resources/news/pdfs/CNA-SHUReportFinal_123014_2.pdf) and USP Lee Post Order produced in FOIA request (Ex. 3 at 46,77).

[7] **Exhibit 11** also shows that correctional officer Jerry Schuler failed to make rounds on October 28th.

5

I acknowledge I have been charged for the commission of an offense against the United States in violation of Title 18, United States Code, Section 1001, in that: on October 28, 2016, in Lee County, Virginia I made false statements and representations in a matter within the jurisdiction of the Government of the United States, in that I falsely represented that at certain times I or another Correctional Officer had completed a required round in the Special Housing Unit of USP-Lee when, in fact, the round had not been completed. I agree that I did falsely represent that at certain times I ·or another Correctional Officer had completed a required round in the Special Housing Unit of USP-Lee when, in π fact, the round had not been completed. I understand that by accepting responsibility for my behavior and by my signature on this Agreement, the United States has agreed the interests of justice will be served by the following procedure.

Also available at: https://ecf.vawd.uscourts.gov/doc1/19113198945

Likewise, On October 27, 2017 Jerry Shuler admitted to this offense and entered a non-prosecution agreement (**Exhibit 14**), that provided in pertinent part:

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION
UNITED STATES OF AMERICA
v. Case No. 2:17CR00018
JERRY SHULER
NON-PROSECUTION AGREEMENT
I acknowledge I have been charged for the commission of an offense against the United States in violation of Title 18, United States Code, Section 1001, in that: between October 17, 2016, and October 28, 2016, in Lee County, Virginia I made false statements and representations in a matter within the jurisdiction of the Government of the United States, in that I falsely represented that at certain times I or another Correctional Officer had completed a required round in the Special Housing Unit of USP-Lee when, in fact, the round had not been completed.
I agree that I did falsely represent that at certain times I or another Correctional Officer had completed a required round in the Special Housing Unit of USP-Lee when, in fact, the round had not been completed. I understand that by accepting responsibility for my behavior and by my signature on this Agreement, the United States has agreed the interests of justice will be served by the following procedure.

Also available at: https://ecf.vawd.uscourts.gov/doc1/19113198931

Because the BOP policies and specific post orders required 30 minutes checks in the SHU, the negligence in failing to make these checks is beyond dispute and not subject to the discretionary function exemption. Proximate cause is also present. The Warden states Foxworthy was found unconscious at 8:58 p.m. on October 28th and corrections officer

6

Sluss admitted he failed to make checks at 6:56 and 8:23 p.m. Accordingly, the failure to conduct rounds was a proximate cause of the assault as earlier checks would likely have noted Horne's aberrant and violent behavior and the failure to make these rounds, by many officers, created the condition whereby Horne knew the guards just were not watching.

Claimant also avers that the facts will show prison officer/employees were specifically aware of Horne's abnormal and dangerous behavior but failed to follow post orders for reporting his behavior and isolating/watching Horne. See UNITED STATES PENITENTIARY LEE JONESVILLE, VIRGINIA SPECIAL HOUSING UNIT LIEUTENANT SPECIAL INSTRUCTIONS (**Exhibit 3** at 52, 53, 55, 56, 83, 84, 87, 88).

*Witnesses:*

- Corrections officers, employees at USP Lee including officers Carter, Marshall, Shuler, Sluss and Lieutenant(s) on duty on October 28, 2016
- Ambulance personnel identified on Exhibit 6.
- Medical providers identified in Exhibit 6.
- USP Lee Warden Ratledge
- Records custodian for USP Lee and USP Pollock for all prison records relating to Jarrod Ty Foxworthy and Eric Horne
- Video/photo footage of USP Lee SHU on 10/28/2016
- All inmates who were present in Jarrod Ty Foxworthy's special housing unit within 48 hours prior to and 48 hours after his death
- BOP records and investigation of incident
- All employees who were involved in any way with any the discovery of Jarrod Ty Foxworthy in an unconscious condition
- F.B.I. records and investigators of the incident
- The identity of the shift officers in charge of Foxworthy's housing unit within 48 hours prior to and 48 hours after his death
- All documents requested in FOIA requests Exhibit 1.

7

**4. Damages**



     Jarrod Ty Foxworthy was 32 years old at the time of his death. He had attended high school in North Carolina and obtained a GED in Louisiana. His father, Ty Foxworthy, is (and was) employed as an inspector for Bristow helicopters in New Iberia, Louisiana. Ty Foxworthy, Jarrod's father, had 2 yr. associate degree in Applied Science and holds an Airframe & Powerplant license. Jarrod's mother, Vicky Foxworthy is a registered nurse (degree from University of Southwestern Louisiana, now University of Louisiana at Lafayette). She was employed as a nurse at High Point Regional Hospital in High Point, North Carolina. Mrs. and Mrs. Foxworthy have one other child, an older sister, Falon Foxworthy, who lives in Raleigh, North Carolina. Ty Foxworthy also owned and

8

operated a custom automotive business, Unique Mustangs and Classic Cars LLC in Broussard, Louisiana.

Jarrod Foxworthy worked with his father in this business at the time of firearms incident (April 2013) that led to his federal felon in possession of a firearm charge. Jarrod had plans to return to this business with his father after serving his federal sentence.[8] Jarrod had also told his parents that he wanted to restart his business, Straight Profit Entertainment, which booked concerts—a job he was also doing before his arrest. Jarrod was going to take over the garage (Unique Mustangs) when he got out of prison. Jarrod's prior criminal record was many years earlier (2009) related to a robbery charge (of a pizza driver) and accessory to a robbery (purse snatched by others where Jarrod was the driver) and other minor offenses.

- *Vital statistics*: 30 years old, in excellent health, single, never married, no children
- *Education*: Attended high school in North Carolina, GED obtained in Louisiana.
- *Family*: Close knit and loving family: parents Vicky Foxworthy, a registered nurse; Ty Foxworthy, an inspector at Bristow helicopter and his sister Falon Foxworthy.
- *Work history*: Straight Profit Entertainment (self-employed concert booking); , Unique Mustangs and Classic Cars LLC in Broussard, Louisiana (employed by father)
- *Life expectancy*: normal for male ~ 46.5 years. Va. Code Ann. §8.01-419.
- *Funeral expenses*: $9596 (Exhibit 17).
- *Pain and suffering*: Foxworthy was violently strangled and found unresponsive at 8:58 p.m. in his cell. He was resuscitated by the ambulance team with "good lung sounds" and "equal bilateral chest rise." He was pronounced dead at 10:27 p.m.
- *Sorrow, mental anguish, and loss of solace suffered by the beneficiaries*. These non-economic damages are recoverable under Virginia law. See Virginia Model Jury Instructions - Civil Instruction No. 9.100 (2018).
- *Loss of Future Income*. Median weekly earnings for workers with a high school diploma/GED in 2018 equals $678. That works out to $35,256 per year. Assuming a work life expectancy of 32 years, total lost earnings = $1,128,192 (without wage inflation or discount factor).
- *Loss of services, protection, care:* These non-economic damages are recoverable under Virginia law. See Virginia Model Jury Instructions - Civil Instruction No. 9.100 (2018).

For comparison purposes, Virginia wrongful damages awards, verdicts or settlements include:

- $4M settlement reached in lawsuit over Va. boating death (Richmond, VA)[9]
- $6,350,000 for wrongful death verdict in Hanover County Cir. Court.[10]

---

[8] https://ecf.lawd.uscourts.gov/doc1/08914746390 (Sentencing Hearing at 5-6) (**Exhibit 15**).

[9] https://wtop.com/virginia/2018/04/4m-settlement-reached-in-lawsuit-over-boating-death/

[10] https://www.blankmarcus.com/Settlements-Verdicts.shtml

- $4.2 million award for the family of a man killed in a workplace accident[11]
- Driver hit woman head-on doing about 70 mph, killed her – $6,000,000 Verdict.[12]
- Pre-K student struck and killed by bus in school parking lot – $4,357,431[13]
- Repairman killed in fiery head-on collision with drunk driver – $6,350,000 Verdict[14]
- Husband liable for $8M in wife's snowstorm death[15]
- Woman died after complications from outpatient procedure – $4,000,000 Verdict[16]
- Drunken drivers struck equipment, killing crewman – $5,000,000 Verdict[17]
- Jury verdict of $6,227,000 on Isaiah Lester's wrongful death claim based on the loss of his wife in a car accident in 2007[18]
- Asbestos case tried under maritime and wrongful death law – $9,182,906 Verdict[19]
- Loudoun jury: $15M for death[20]

This claim is filed in the sincere hope that the BOP and United States (Asst. Attorney General in charge of the Civil Division) will review and fairly negotaite and compromise this matter without a long litigious court case(s). If any additional information is needed or if you have any questions, please contact Mrs. Foxworthy's counsel: David Randolph Smith (615) 742-1775, drs@drslawfirm.com.

---

[11] https://valawyersweekly.com/tag/million-dollar-verdicts/page/2/

[12] https://valawyersweekly.com/2016/08/01/driver-hit-woman-head-on-doing-about-70-mph-killed-her-6000000-verdict/

[13] https://valawyersweekly.com/2015/01/12/pre-k-student-struck-and-killed-by-bus-in-school-parking-lot-4357431-verdict/

[14] https://valawyersweekly.com/2014/12/08/repairman-killed-in-fiery-head-on-collision-with-drunk-6350000-verdict/

[15] https://valawyersweekly.com/2014/05/19/husband-liable-for-8m-in-wifes-snowstorm-death/

[16] https://valawyersweekly.com/2014/04/21/woman-died-after-complications-from-outpatient-procedure-4000000-verdict/

[17] https://valawyersweekly.com/2013/04/29/drunken-drivers-struck-equipment-killing-crewman-5000000-verdict/

[18] https://valawyersweekly.com/2013/01/10/high-court-reinstates-full-verdict-in-lester/

[19] https://valawyersweekly.com/2012/03/19/asbestos-case-tried-under-maritime-and-wrongful-death-law-9182906-verdict/

[20] https://valawyersweekly.com/2012/02/20/loudoun-jury-15m-for-death/

Signed: _Victoria Foxworthy_
           Victoria Foxworthy

Dated: 6-2-18

**Exhibits**:

1     FOIA requests
2     Brembry v. United States, No. 7:10-cv-388, 2011 U.S. Dist. LEXIS 3302 (W.D. Va. Jan. 13, 2011
3     US Lee SHU Post Orders
4     Letter from Warden Ratledge
5     Autopsy Report
6     Medical and Ambulance Records
7     USP Pollock Administrative Records Detention Order
8     Eric Horne records
9     Indictment Carter
10    Indictment Marshall
11    Indictment Shuler
12    Indictment Sluss
13    Non Prosecution Agreement Sluss
14    Non Prosecution Agreement Shuler
15    Transcript of Jarrod Ty Foxworthy Sentencing Hearing
16    Jarrod Foxworthy Plea Agreement
17    Funeral and Burial Expenses
18    Estate qualification court papers for appointment of Victoria Foxworthy

11

**Exhibit 2**



**U.S. Department of Justice**

Federal Bureau of Prisons

*Beckley Consolidated Legal Center*

---

*1600 Industrial Park Road, P.O. Box 1280*
*Beaver, West Virginia 25813*

David Randolph Smith, Esquire
David Randolph Smith & Associates
1913 21ˢᵗ Street
Nashville, Tennessee 37212

FEB 0 4 2019

Re:     Administrative Claim No. TRT-MXR-2018-05705
        Jarrod Foxworthy

Dear Mr. Smith:

The above referenced claim has been considered for administrative settlement under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.*, and authority granted under 28 C.F.R. § 0.172. Your client seeks $5,000,000.00 for the wrongful death of Jarrod Foxworthy. Specifically, it is alleged that employees at the United States Penitentiary (USP) Lee failed to conduct 30 minute rounds in the Special Housing Unit (SHU) as required by policy and failed to protect Mr. Foxworthy from a known dangerous inmate, resulting in Mr. Foxworthy's death.

The circumstances surrounding the death of Mr. Foxworthy were reviewed and there is no basis for settlement of this claim. This is a final denial of the claim. If you are not satisfied with this determination, you have six months from the date of mailing of this letter to bring suit in an appropriate United States District Court, should you wish to do so.

Sincerely,

DEBBIE
STEVENS
Matthew W. Mellady
Regional Counsel